**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 19-18-DLB**

**4TH LEAF, LLC**                                                                                 **PLAINTIFF**

**v.**                            **MEMORANDUM OPINION AND ORDER**

**CITY OF GRAYSON, et al.**                                              **DEFENDANTS**

This matter is before the Court upon a Motion to Dismiss, wherein Defendants City of Grayson; George Steele, individually and as Mayor of City of Grayson; Jack Harper, individually and as a Grayson City Council Member; Pam Nash, individually and as a Grayson City Council Member; and Terry Stamper, individually and as a Grayson City Council Member (collectively "Defendants"), seek dismissal of Plaintiff 4th Leaf, LLC's claims for violations of its constitutional rights under 42 U.S.C. § 1983. (Doc. # 17). The Motion is fully briefed and ripe for review. (Docs. # 19 and 20). For the reasons stated herein, the Motion to Dismiss is **granted in part** and **denied in part.**

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 1999, Plaintiff 4th Leaf, LLC purchased a piece of property in Grayson, Kentucky. (Doc. # 1 at ¶ 16). Plaintiff eventually sold most of the property, but it retained a portion of the property to use as a private roadway ("the Roadway"). (Doc. # 19-4 at 1). The Roadway is the subject of this dispute. In 2012, Defendant City of Grayson introduced Ordinance No. 2-2012 ("the Ordinance") which proposed opening the Roadway to the public and incorporating it into the city road system. (Doc. # 1 at ¶¶ 23–

24).  City of Grayson claimed it had authority to enact the Ordinance under Ky. Rev. Stat. § 82.400(3).[1]  *Id.*  The City of Grayson held the first public reading of the Ordinance on March 22, 2012 and a second public reading on March 27, 2012.  *Id.* at ¶ 24.  The Ordinance was adopted at both readings.  *Id.*  Grayson City Council Members Defendants Jack Harper, Pam Nash, and Terry Stamper voted in favor of the Ordinance, and Defendant Mayor George Steele signed it into law.  *See* (Doc. # 19-4 at 7–8).

On April 19, 2012, Plaintiff filed suit in Carter Circuit Court (the "state court action") against Defendants and other individuals who were involved in the adoption of the Ordinance.  (Doc. # 19-3).  The state court action includes two counts: Count 1 requests that the court declare the Ordinance "illegal, void, unconstitutional, invalid, and of no force and effect," and Count 2 requests damages for inverse condemnation and constitutional violations stemming from the adoption of the Ordinance.  *Id.* at 9–11.  On April 18, 2013, Plaintiff filed a Motion for Judgment on the Pleadings, asking the Carter Circuit Court to enter an order "in conformity with the relief requested in . . . Count 1 . . . and for all other relief to which it may appear to be entitled."  (Doc. # 20-1 at 10).  On July 23, 2014, the Carter Circuit Court entered an Order granting Plaintiff's Motion for Judgment on the Pleadings and invalidating the Ordinance.  (Doc. # 19-4).  The Order did not address Plaintiff's inverse-condemnation claim or order any form of relief beyond invalidating the

---

[1]     Ky. Rev. Stat. § 82.400(3) states:

> When any property has been opened to the unrestricted use of the general public for five (5) consecutive years, it shall be conclusively presumed to have been dedicated to the city or consolidated local government as a public way or easement, subject to acceptance by the city or consolidated local government.  The city or consolidated local government may, at any time after the expiration of five (5) years from the time the property is opened to the public, pass an ordinance declaring it so dedicated, and accepting the dedication, whereupon it shall be a public way or easement of the city or consolidated local government for all purposes.

Ordinance.  *Id.* at 23.  The Kentucky Court of Appeals affirmed the Carter Circuit Court's Order and then denied Defendant's petition for rehearing.  (Docs. # 19-5 and 19-6).  The Supreme Court of Kentucky denied discretionary review.  (Doc. # 19-7).  Count 1 having been resolved, the case is still pending in Carter Circuit Court on Count 2.

After the Kentucky Supreme Court denied discretionary review of the Carter Circuit Court Order, Plaintiff filed this action on February 12, 2019.  (Doc. # 1).  Plaintiff brings three claims pursuant to 42 U.S.C. § 1983.  *Id.* at ¶¶ 31–62.  First, Plaintiff claims that the Ordinance was an unlawful taking of its property without just compensation.  *Id.* at ¶¶ 31–43.  Second, Plaintiff alleges that Defendants engaged in an unlawful custom and practice to deprive Plaintiff of its property when Defendants passed the Ordinance.  *Id.* at ¶¶ 44–50.[2]  Finally, Plaintiff claims that Defendants violated its due-process rights by passing the Ordinance.[3]  *Id.* at ¶¶ 51–60.  The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

On March 14, 2019, Defendants filed a Motion to Dismiss, arguing that the Complaint should be dismissed because the Court lacked subject-matter jurisdiction and also because the Complaint fails to state a claim upon relief may be granted.  (Doc. # 17).  Initial briefing was complete on April 18, 2019.  (Docs. # 19 and 20).  In light of the

---

[2]     Although styled as a separate claim, Plaintiff appears to be stating that the constitutional violations set forth in the remaining counts resulted from "Defendant, City of Grayson, knowingly maintain[ing] and permitt[ing] official policies or customs of permitting the occurrence of the kinds of wrongs set forth" in the Complaint.  (Doc. # 1 at ¶ 47).  Such a finding is required in order to hold a city liable under § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Both parties rely on *Monell* when addressing the unlawful-custom-and-practice claim.  (Doc. # 17-1 at 14–15); (Doc. # 19-1 at 13).  Accordingly, the Court will construe Plaintiff's Count 2 of the Complaint as an allegation that Defendant City of Grayson is liable under *Monell* because a government policy or custom contributed to Plaintiff's injuries.  (Doc. # 1 at ¶¶ 44–50).

[3]     The Complaint incorrectly labels this claim as "Claim II" even though it is Plaintiff's third claim.  (Doc. # 1 at 9).

Supreme Court's ruling in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), on September 17, 2019, the Court ordered the parties to file contemporaneous supplemental briefs addressing the applicability of *Knick* to the Motion to Dismiss. (Doc. # 21). The parties having submitted their supplemental briefs, (Docs. # 22 and 23), this matter is ripe for the Court's review.

## II.   ANALYSIS

### A.   Standard of Review

#### 1.   Dismissal for Lack of Subject-Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows parties to move for dismissal of a complaint when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The court lacks subject-matter jurisdiction if the action is not ripe for review. *Bigelow v. Mich. Dep't of Nat. Res.,* 970 F.2d 154, 157 (6th Cir.1992).[4] In a Rule 12(b)(1) motion, the plaintiff has the burden of proving that the Court has subject-matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). A court considers 12(b)(1) arguments before any additional 12(b) motions because any remaining arguments would be moot if subject-matter jurisdiction is lacking. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). A "motion to dismiss for failure to state a cause of action may be decided only after establishing subject matter jurisdiction, since determination of the validity of the claim is, in itself, an exercise of jurisdiction." *Id.* (*citing Bell v. Hood*, 327 U.S. 678, 682 (1946)).

---

[4]     A motion under Rule 12(b)(1) can attack a complaint in two ways: facially and factually. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). However, given that Defendants admit that their 12(b)1(1) argument is now moot, *see infra*, the Court will not address the distinction.

## 2.    *Dismissal for Failure to State a Claim*

Federal Rule of Civil Procedure 12(b)(6) allows parties to move for dismissal of a complaint when it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. 544, 570 (2007)).  Allegations are plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint need not contain "detailed factual allegations," but must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.*  Put another way, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff [and] accept all well-pleaded factual allegations as true."  *Hill v. Synder*, 878 F.3d 193, 203 (6th Cir. 2017).

In reviewing a 12(b)(6) motion to dismiss, the Court "may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein."  *DeJohn v. Lerner, Sampson & Rothfuss*, No. 1:12CV1705, 2012 WL 6154800, at *2 (N.D. Ohio Dec. 11, 2012) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### B.    Subject-Matter Jurisdiction

As an initial matter, the Court has subject-matter jurisdiction over this action

because Plaintiff's claims are ripe for review. The ripeness doctrine is meant "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 508 (6th Cir. 2006) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985)). Relying on *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), Defendants originally argued that Plaintiff's claims were not ripe because Plaintiff had not exhausted its state remedies, which was a prerequisite to bringing a takings claim pursuant to § 1983 under *Williamson County*. (Doc. # 17-1 at 5–7) (citing *Williamson Cty.*, 473 U.S. at 194). The United States Supreme Court, however, overturned *Williamson County* during the pendency of this Motion in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019). Under *Knick*, a takings claim pursuant to § 1983 is now ripe "upon the taking of [plaintiff's] property without just compensation by a local government." *Knick*, 139 S. Ct. at 2179. In their Supplemental Brief, Defendants concede that Plaintiff's claims are ripe under the new standard articulated in *Knick*. (Doc. # 23 at 2). Accordingly, Defendants Motion to Dismiss pursuant to 12(b)(1) is **denied as moot**.

### C. Failure to State a Claim

Having established subject-matter jurisdiction, the Court turns to Defendants' arguments that the Complaint should be dismissed for failure to state a claim upon which relief may be granted. *See generally* (Doc. # 17-1 at 9–15). Defendants make five arguments to support dismissal under 12(b)(6). *Id.* First, Defendants claim that Plaintiff's due-process claims[5] are barred by the statute of limitations. (Doc. # 17-1 at 10–11).

---

[5] Plaintiff's Complaint does not specify whether it alleges a procedural-due-process claim, a substantive-due-process claim, or both. (Doc. # 1 at 9–10). In their Motion to Dismiss, Defendants construe Plaintiff's allegations as a procedural-due-process claim only, arguing that Plaintiff did not bring a substantive-due-process claim because "Plaintiff has not alleged that the

Second, Defendants argue that if Plaintiff's due-process claims are not barred by the statute of limitations, then they are barred by res judicata. *Id.* at 11–13. Third, Defendants assert that all claims against Defendants Steele, Harper, Nash, and Stamper (collectively, the "Individual Defendants") in their official capacities should be dismissed because the City of Grayson is also a Defendant. *Id.* at 13. Fourth, Defendants claim that all claims against Defendants Steele, Harper, Nash, and Stamper in their individual capacities are barred by legislative immunity. *Id.* at 13–14. Fifth, Defendants argue that all claims against Defendant City of Grayson should be dismissed because Plaintiff's claims against the municipality fail as a matter of law. *Id.* at 14–15. The Court will address each argument in turn.

### 1. *Statute of Limitations*

First, Defendants argue that Plaintiff's due-process claims are barred by the statute of limitations. Both parties agree that the statute of limitations for Plaintiff's due-process claims is one year, and the Court agrees.[6] *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); (Doc. # 17-1 at 10); (Doc. # 19-1 at 14). The parties disagree, however, on when the statute of limitations started to run. Defendants argue

---

ordinance was arbitrary and/or capricious." (Doc. # 17-1 at 7). In its Response, Plaintiff disputes Defendant's reading of the Complaint and argues that it is claiming both procedural and substantive-due-process violations. (Doc. # 19-1 at 7–8). In their Reply, Defendants appear to concede that Plaintiff may have also brought a substantive-due-process claim and discuss both procedural and substantive due process. (Doc. # 20). Out of an abundance of caution, the Court will accept Plaintiff's assertion that it alleges both a procedural-due-process claim and a substantive-due-process claim and will address both.

[6] Although "Section 1983 provides a federal cause of action . . . in several respects . . . federal law looks to the law of the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). One such instance is the duration of the statute of limitations. *Id.* The length of the statute of limitations "is that which the State provides for personal-injury torts." *Id.* Thus, § 1983 actions filed in Kentucky are subject to the one-year statute of limitations set forth in Ky. Rev. Stat. § 413.140(1)(a).

that the due-process claims accrued in 2012 when the Ordinance was adopted. (Doc. # 17-1 at 10–11). In contrast, Plaintiff contends the claims did not accrue until August 2018, when the Kentucky Supreme Court denied discretionary review of the Carter Circuit Court order. (Doc. # 19-1 at 15). Alternatively, if the claims did accrue in 2012, then Plaintiff argues that the statute of limitations should be tolled while Plaintiff pursues litigation in state court. *Id.* at 14–15. The Court finds both arguments to be misguided; rather, Plaintiff's claims are not barred by the statute of limitations because the statute of limitations was tolled until the Supreme Court decided *Knick v. Township of Scott* on June 21, 2019.

A motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Jodway v. Orlans, PC*, 759 F. App'x 374, 379 (6th Cir. 2018) (quoting *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). A motion to dismiss upon on statute of limitations should be granted, however, "if the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)). As statute of limitations "is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." *Id.*

While state law determines the length of the statute of limitations, federal law determines when the statute of limitations begins to run on claims pursuant to § 1983. *Wallace*, 549 U.S. at 388. Generally, "accrual occurs when the plaintiff has a complete and present cause of action" and "can file suit and obtain relief." *Id.* (internal citations and quotation marks omitted). Put another way, "the limitations period starts to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his

action.'" *Kuhnle Bros., Inc. v. Cty. of Geauga,* 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)).  A plaintiff has reason to know of the injury which is the basis of his action when an event occurs that "should have alerted the typical lay person to protect his or her rights."  *Id.* (citing *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

When a claim accrues for statute of limitation purposes is closely tied to when a claim ripens for standing purposes.  If accrual occurs when a plaintiff "can file suit and obtain relief," then it logically follows that a claim may ripen and accrue at the same time.  *Wallace*, 549 U.S. at 388.  While several courts have expressly linked accrual and ripeness, other courts have stopped short of conflating the two.  *Compare Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016) (citing *Wallace* for the proposition that "the Supreme Court has held that a claim accrues for statute-of-limitations purposes at the same time that it ripens"), *and Hensley v. City of Columbus*, 557 F.3d 693, 696 (6th Cir. 2009) (finding that the plaintiffs' takings claim ripened "when the statute of limitations began to run"), *with Kuhnle Bros.*, 103 F.3d at 520–21 (holding that even though plaintiff's takings "claim may be unripe," it was barred by the statute of limitations, which accrued when the regulation in question was passed).

Courts tend to agree, however, that accrual occurs when a plaintiff becomes aware of the injury that is the basis for the action.  *Compare Kuhnle*, 103 F.3d at 520 ("[T]he limitations period starts to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'") (quoting *Sevier v. Turney*, 742 F.2d 262, 273 (6th Cir. 1984)), *with Am. Premier Underwriters*, 839 F.3d at 461 ("The statute of

limitations begins to run when a plaintiff 'knows or has reason to know of the injury which is the basis of his action.'") (quoting *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005)). Courts have found that procedural-due-process claims based on an improper ordinance accrue "at the time that process was denied because 'the allegedly infirm process is an injury in itself.'" *Am. Premier Underwriters*, 839 F.3d at 461 (quoting *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991)). Similarly, substantive-due-process claims for deprivation of property by an ordinance accrue on the date that the resolution in question was enacted. *Kuhnle Bros.*, 103 F.3d at 521.

Here, Plaintiff had reason to know of the injury that is the basis of its due-process claims in 2012 when the Ordinance was passed. All of the events that Plaintiff references to support its due-process claims—such as Defendants' alleged failure to give Plaintiff "due process in the form of public notice, hearings, recognition of vested rights, and taking of property rights and values"—occurred in 2012 when the Ordinance was drafted, debated, and adopted. (Doc. # 1 at ¶ 53). Plaintiff should have known that it needed to act to protect its rights when the Ordinance was adopted in March 2012 and the Roadway became part of the City of Grayson road system. In fact, Plaintiff *did* act on April 19, 2012, when it sued Defendants and others in state court claiming that passing the Ordinance "violated the constitutional rights of Plaintiff."[7] (Doc. # 19-2 at ¶ 28). Because

---

[7] Courts have considered the filing of a state action as evidence that a plaintiff knew of the injury against him. *See, e.g.*, *McNamara v. City of Rittman*, 473 F.3d 633, 638 (6th Cir. 2007) ("The date on which the plaintiffs filed their state court complaint is, logically, the latest time at which they could have first known of their injury."); *Duncan v. Village of Middlefield*, 951 F.2d 348, 1991 WL 276270, at * 4 (6th Cir. 1991) (unpublished table opinion) (holding that plaintiff knew of his injury when he filed a state action claiming constitutional violations based on the same facts which underpinned his federal action).

Plaintiff knew of the injury which was the basis of its due-process claims in 2012, the one-year statute of limitations began to run in 2012.

Even if, as some courts have held, Plaintiff's due-process claims accrued when they ripened, *see, e.g., Am. Premier Underwriters*, 839 F.3d at 461, the statute of limitations would still have begun to run in 2012. If the due-process claims are ancillary to Plaintiff's takings claim,[8] then the ripeness requirements the Supreme Court articulated in *Knick* would apply, and the claims would ripen once the government allegedly took Plaintiff's property without just compensation.[9] *See Knick*, 139 S. Ct. at 2172. If the due-process claims are not ancillary to the takings claim, then they would ripen once Plaintiff was injured or once the injury was imminent. *See National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997). Under both tests, Plaintiff's due-process claims ripened and accrued in 2012 when the Ordinance was passed. Plaintiff alleges that it was actually and concretely injured when Defendants passed the Ordinance, taking Plaintiff's property without just compensation. (Doc. # 1 at ¶ 61).

---

[8] The Sixth Circuit has consistently held that "substantive due process and procedural due process claims ancillary to a takings claim" must meet the same ripeness standard as the central takings claim. *See Beech v. City of Franklin*, 687 F. App'x 454, 456 (6th Cir. 2017). Thus, if Plaintiff's due-process claims are ancillary to Plaintiff's takings claim, then *Knick* applies to the due-process claims as well.

[9] In its Supplemental Brief, Plaintiff argues that *Knick* should not apply because the "Supreme Court has held that cases involving statutory issues [are] not retroactive except to the parties in the case" and that "retroactivity has never been to the detriment of the party who is otherwise reasonably relying on the State of the Law at the time of filing." (Doc. # 22 at 2). Plaintiff is mistaken. The Supreme Court has routinely held that when applying "a rule of federal law to the parties before it, that rule [becomes] the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Supreme Court's] announcement of the rule." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). A new rule is retroactive even if it makes a previously timely action untimely. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752 (1995) (finding that a recent Supreme Court case "retroactively invalidated the tolling provision that [made the plaintiff's] suit timely" (internal quotations omitted)).

Thus, even if the statute of limitations began when Plaintiff's due-process claims *ripened* then the statute of limitations still began in 2012 and has since expired.

Plaintiff appears to argue, however, that even if the statute of limitations began in 2012, it was tolled until the Kentucky Supreme Court denied discretionary review of the Carter Circuit Court order invalidating the Ordinance because Plaintiff "pursued its rights diligently" and "attempted to seek redress but the state court failed to give it access for damages or just compensation." (Doc. # 19-1 at 15). "Equitable tolling is a rare remedy to be applied in unusual circumstances." *Wallace*, 549 U.S. at 396. The party requesting tolling bears the burden of proof. *See McCord v. Bd. of Educ. of Fleming Cty.*, No. 17-5548, 2018 WL 1724560, at * 4 (6th Cir. 2018). In § 1983 actions, the law of the state where the federal court sits applies unless the state law is "inconsistent with [the] federal policy underlying section 1983." *Jones v. Shankland*, 800 F.2d 77 (6th Cir. 1986) (citing *Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 484–85 (1980)). Because Kentucky's tolling laws are consistent with the federal policy underling section 1983, *see infra*, Kentucky's tolling laws apply here.

Kentucky will toll the statute of limitations in rare cases in which plaintiffs are prejudiced by circumstance beyond their control. Specifically, the statute of limitations is tolled when a Kentucky resident is out of the state when the claim accrues, Ky. Rev. Stat. § 413.190(1), when the plaintiff is an infant or of unsound mind when the claim accrues, Ky. Rev. Stat. § 413.170, or when the defendant obstructs the prosecution of the action, Ky. Rev. Stat. § 413.190(2). Plaintiff's Complaint does not allege that any of these three statutory provisions apply in this case. In addition to these statutory

provisions, however, Kentucky also allows equitable tolling "in limited circumstances where a plaintiff was diligent in pursuing his rights but factors beyond his control prevented the action from being commenced within the limitation period." *Stoner v. Percell*, 3:13-cv-00762-CRS, 2014 WL 6611557, at *5 (W.D. Ky. Nov. 20, 2014) (citing *Nanny v. Smith*, 260 S.W.3d 815, 817–18 (Ky. 2008); *Robertson v. Commonwealth*, 177 S.W.3d 789, 792–93 (Ky. 2005), *overruled on other grounds by Hallum v. Commonwealth*, 347 S.W.3d 55, 58–59 (Ky. 2011)). In *Nanny*, for example, the court tolled the statute of limitations when the summons was not timely issued due to a clerk error. *Nanny*, 260 S.W.3d at 817–18. In contrast, the court did not toll the statute of limitations in *Stoner*. In *Stoner*, the plaintiffs claimed that the statute of limitations for their due-process claim pursuant to § 1983 should be tolled while "they diligently pursued their rights in state administrative proceedings and state court." *Stoner*, 2014 WL 6611557, at *5. There the court found that the statute of limitations was not tolled because the plaintiffs could have brought their § 1983 claims "immediately after those claims accrued" and "were not required to exhaust available state remedies before invoking the federal remedy under § 1983." *Id.* at *5.

Here, the Court finds that the Plaintiff was prejudiced by the Supreme Court's position in *Williamson County*, so under Kentucky law the statute of limitations was tolled until the Supreme Court's ruling in *Knick*. Under the previously binding *Williamson County* test, Plaintiff's due-process claims likely would not have been ripe when the Ordinance passed because Plaintiff had not yet exhausted its state remedies.[10] In fact,

---

[10] If Plaintiff's due-process claims had been subject to *Williamson County*, then Plaintiff would have needed to exhaust its state remedies before bringing its claims pursuant to § 1983 in federal court. *Williamson Cty.*, 473 U.S. at 195.

until *Knick* removed the state-exhaustion requirement, Plaintiff could not bring its due-process claims pursuant to § 1983 in federal court. Federal courts have tolled the statute of limitations in other § 1983 actions while the plaintiff pursues required alternative remedies. For example, under 42 U.S.C. § 1997e(a), a prisoner cannot bring a claim under § 1983 until the prisoner has exhausted all administrative remedies, and the statute of limitations is tolled while the prisoner pursues those required administrative remedies. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Thus, it would align with federal policy to also toll the statute of limitations in a unique case such as this one where the plaintiff's claims were barred until the Supreme Court reversed its prior precedent.

Because the state-exhaustion requirement of *Williamson County* likely would have prevented Plaintiff from immediately bringing its due-process claims after the Ordinance was passed, it would be unjust to find that the claims are now barred. Instead, the Court finds that the statute of limitations was tolled until June 21, 2019 when the Supreme Court overruled *Williamson County* and removed the state-exhaustion requirement for federal-takings claims pursuant to § 1983. Accordingly, the one-year statute of limitations has not expired, and Plaintiff's due-process claims are therefore not barred on this ground.

### 2.    *Res Judicata*

Next, Defendants claim that "because Plaintiff could have brought its federal constitutional claims in state court," its due-process claims are barred by res judicata. (Doc. # 17-1 at 11–12). In response, Plaintiff argues that res judicata does not apply

because the state court has not issued a final order on the issue of damages and compensation. (Doc. # 19-1 at 11–12). Plaintiff is correct.

"When deciding whether to afford preclusive effect to a state court judgment, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal court to give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In other words, "[i]f an individual is precluded from litigating a suit in state court by traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court. We look to the state's law to assess the preclusive effect it would attach to that judgment." *Ohio ex rel Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (internal quotations and citations omitted). Thus, the Court must determine whether Plaintiff's due-process claims would be barred by res judicata in Kentucky. *Id.*; *Tyler*, 736 F.2d at 460. In Kentucky, res judicata, also known as claim preclusion,[11] "stands for the principle that once rights of the parties have been finally determined, litigation should end." *Slone v. R & S Mining, Inc.*, 74 S.W.3d 259, 261 (Ky. 2002). Claim preclusions bars a subsequent lawsuit when: (1) there is an identity of parties between the two suits; (2) there is identity of the two causes of action; and (3) the prior action has been decided on the merits. *Miller*, 361 S.W.3d at 872. In addition to barring

---

[11] While res judicata is "sometimes thought of as an umbrella doctrine that contains within it both claim and issue preclusion," *Miller v. Admin Office of Courts*, 361 S.W.3d 867, 871 (Ky. 2011), Defendants use the term "res judicata" as a synonym for claim preclusion. (Doc. # 17-1 at 12) ("[B]ecause Plaintiff could have brought its federal constitutional claims in state court, yet did not, that claim is now barred by the operation of claim preclusion.").

claims that were previously litigated, claim preclusion also bars "claims that could have been brought in the former action."[12]  *Id.* at 873.

Here, claim preclusion does not preclude Plaintiff's due-process claims because the state court action has not been decided on the merits.   Claim preclusion is inapplicable unless there was a "*final judgment* rendered upon the merits" in the prior case.  *Yeoman v. Commonwealth Health Policy Bd., Ky.*, 983 S.W.2d 459, 464 (1998) (emphasis added) (quoting 46 Am. Jur. 2d *Judgments* § 514).   Under Kentucky law, a judgment is final if it adjudicates "all the rights of all the parties in an action or proceeding" or if it adjudicates less than all the claims in a proceeding but the court "determine[es] that there is no just reason for delay" and the judgment says it is the final judgment on the claims adjudicated.  Ky. R. Civ. P. §§ 54.01, 54.02.   In the pending state court action, there has only been a final judgment on the issue of whether the Ordinance is unlawful.   The trial court granted Plaintiff's Motion for Judgment on the Pleadings, which asked the court to "enter an order in conformity with the relief requested . . . *on Count 1*, and for all other relief to which it may appear to be entitled." (Doc. # 20-1 at 10) (emphasis added).  The state court has not issued a final judgment on Plaintiff's second count, which seeks damages for "inverse condemnation and constitutional violations."  (Doc. # 19-3 at 10–11).  Until there is a final judgment as to Plaintiff's constitutional claims in the state court action, claim preclusion does not apply

---

[12]     Defendants focus on this final point, arguing that "because Plaintiff could have brought its federal constitutional claims in state court . . . [those claims are] now barred by the operation of claim preclusion."  (Doc. # 17-1 at 12).   However, the Court need not decide whether Plaintiff's claims could have been brought in state court.   Even if Plaintiff could have brought its constitutional claims in state court, res judicata would not bar Plaintiff's federal claims unless there had been a final judgment rendered upon the merits in the state court action.

to any of the claims now before this Court.  Accordingly, Plaintiff's due-process claims are not barred by res judicata.

### 3. *Official Capacity*

Third, Defendants claim that all counts against Individual Defendants in their official capacities should be dismissed because City of Grayson is also joined as a party. (Doc. # 17-1 at 13–14).  Defendants explain that joining Individual Defendants in their official capacities is unnecessary because "actions against parties in their official capacities are, essentially, actions against the entities for which the officers are agents." *Id.*  Plaintiff did not address this argument in its Response.  (Doc. # 19-1).  Because Plaintiff did not contest this issue, Defendants argue that they are entitled to dismissal of all claims against Individual Defendants in their official capacities.  (Doc. # 20 at 12).  The Court agrees that all claims against Individual Defendants in their official capacities should be dismissed.

A suit against an individual in his official capacity is a suit against the government entity itself.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 752 (6th Cir. 2004).  In a § 1983 action, a "judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided [that] . . . the public entity received notice and an opportunity to respond."  *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985).  There is no need "to bring official-capacity actions against local government officials" because "local government units can be sued directly."  *Graham*, 473 U.S. at 167 n.14.  Sister courts have dismissed claims against individuals in their official capacities "on redundancy grounds" when the government entity the official represents is also joined.

*See, e.g.*, *Smith v. Flinkflet*, No. 3:13-cv-02, 2014 WL 1331182, at *6 (E.D. Ky. Mar. 31, 2014); *see also Goodwin v. Summit Cty.*, 703 F. App'x 379, 382–83 (6th Cir. 2017).

Furthermore, a plaintiff generally concedes a defense when they fail to respond to the defendant's argument. *Humphrey v. U.S. Att'y Gen.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." (quoting *Scott v. Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table opinion)). For example, in *Heyne v. Metropolitan Nashville Public Schools*, this Circuit affirmed the dismissal of claims against individuals in their official capacities after the plaintiff did not contest defendants' argument that the claims were duplicative because the municipality was also joined. 655 F.3d 556, 561 (6th Cir. 2011).

Here, Defendants are correct that it is unnecessary to join Individual Defendants in their official capacities when the City of Grayson is also a party. Because any claims against Individual Defendants in their official capacities are duplicative, and because Plaintiff failed to respond to Defendants' argument, dismissal is warranted. Accordingly, all claims against Defendants Steele, Harper, Nash, and Stamper in their official capacities are **dismissed**.

### 4. *Legislative Capacity*

Next, Defendants argue that legislative immunity bars all claims against Individual Defendants in their individual capacities because passing the Ordinance was a legislative act. (Doc. # 17-1 at 13–14). In opposition, Plaintiff appears to argue that passing the Ordinance was not a legislative act because the Ordinance "impacted and effected only one person akin to an eminent domain action." (Doc. # 19-1 at 13). Plaintiff also likens

passing the Ordinance to passing a bill of attainder, which Plaintiff claims is not a legislative function. (Doc. # 19-1 at 13). At minimum, Plaintiff argues that discovery is needed to determine whether the Individual Defendants' actions were legislative. *Id.* at 12. The Court finds that no discovery is needed because it is clear that the Individual Defendants in their individual capacities are protected by legislative immunity.

Local legislators are absolutely immune from liability for legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54. Legislative immunity applies if an act is both legislative in form and legislative in substance. *Guindon v. Twp. of Dundee*, 488 F. App'x 27, 33 (6th Cir. 2012). An act is legislative in form if it is an "integral step[] in the legislative process." *Id.* (quoting *Bogan*, 523 U.S. at 55). An act is legislative in substance if it bears "'all the hallmarks of traditional legislation,' including 'a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents.'" *Id.* (quoting *Bogan*, 523 U.S. at 55–56). Legislative immunity protects any local officials, including executive officials, if their actions are integral to the legislative process. *Bogan*, 523 U.S. at 55. The Individual Defendants have the burden to prove that they are protected by legislative immunity. *Guindon*, 488 F. App'x at 33.

An act can be legislative even if it directly affects only one person or one piece of property. In *Bogan*, for example, the Supreme Court found that legislative immunity protected officials who passed an ordinance that eliminated a government department with only one employee, the plaintiff. *Bogan*, 523 U.S. at 55–56; *see also Arabbo v. City of Burton*, 689 F. App'x 418, 421 (6th Cir. 2017) (holding that legislative immunity

protected officials who voted to reject an individual's proposal that the city help refinance his commercial mortgage); *Collins v. Village of New Vienna*, 75 F. App'x 486, 487–88 (6th Cir. 2003) (holding that legislative immunity protected officials who passed an ordinance that only eliminated plaintiff's job as Village Administrator).  In *Bogan*, the Supreme Court explained that "unlike the hiring and firing of a particular employee," an ordinance that terminates a singular government position "may have prospective implications that reach well beyond the particular occupant of the office." *Bogan*, 523 U.S. at 56.  Several circuits have used *Bogan*'s rationale to apply legislative immunity to ordinances that affect individual pieces of property.  For example, in *Sable v. Meyers*, the Tenth Circuit held that legislative immunity protected officials who passed an ordinance condemning a single parcel of land.  563 F.3d 1120, 1127 (10th Cir. 2009).  Similarly, the Seventh Circuit has held that legislative immunity protects officials who passed ordinances that changed the zoning code for specific parcels of property.  *Biblia Abierta v. Banks*, 129 F.3d 899, 906 (7th Cir. 1997); *see also Stauss v. City of Chicago*, 346 F. Supp. 3d 1193, 1206 (E.D. Ill. 2018).

Here, passing the Ordinance was a legislative act in both form and substance. "[V]oting for an ordinance [is], in form, quintessentially legislative." *Bogan*, 523 U.S. at 55.  The Individual Defendants followed the legislative procedures prescribed by the City of Grayson Code of Ordinances when they passed the Ordinance.  *See* City of Grayson Code of Ordinances § 20.210.  The Complaint alleges that Individual Defendants held two public readings of the Ordinance, and that the Ordinance was adopted at both readings.  (Doc. # 1 at ¶ 24).  The Ordinance is also legislative in substance.  The City of Grayson's decision to adopt the Ordinance and consolidate the Roadway into the public-

road system "implicat[es] the budgetary priorities of the city" because the City of Grayson will now have to budget for the maintenance of the Roadway. *Bogan*, 523 U.S. at 55–56. The Ordinance also affects "the services the city provides to its constituents" because now City of Grayson residents will be able to use the Roadway freely. *Id.* at 56. Because passing the Ordinance was legislative in form and substance, legislative immunity protects Individual Defendants in their individual capacities. Accordingly, all claims against Defendants Steele, Harper, Nash, and Stamper in their individual capacities are also **dismissed**.

### 5. *Municipal Liability*

Fifth, Defendants argue that Defendant City of Grayson should be dismissed as a party because Plaintiff has not demonstrated that the municipality is liable for Plaintiff's injury because it did not undertake an improper policy or practice. (Doc. # 17-1 at 14–15). Defendants' argument warrants further clarification. Originally, Defendants argued that there is no underlying constitutional violation because under *Williamson County* no federal constitutional violation occurred until Plaintiff exhausted its state remedies. *Id.* In their Supplemental Brief, Defendants appear to concede that Plaintiff has plausibly stated a constitutional § 1983 violation under the new standard articulated in *Knick*. (Doc. # 23 at 3) ("[T]he underlying constitutional violation which serves as the basis for Plaintiff's *Monell* claim is the inaction of Ordinance 2-2012 which . . . under *Knick* . . . accrued on the date of the taking—the date the Ordinance was passed."). Defendants still maintain, albeit with little justification, that Plaintiff did "not fulfill the pleading requirements for federal court."[13] *Id.* at 4. Accepting Plaintiff's evidence as true and drawing all reasonable

---

[13] In their Supplemental Brief, Defendants state that "Plaintiff *has* adequately pled a claim against the City of Grayson for an unlawful custom and practice." (Doc. # 23 at 4) (emphasis

inferences in its favor, *Twombly*, 550 U.S. at 570, the Court finds that Plaintiff has set forth sufficient evidence of the requisite alleged illegal policy or custom to state a plausible claim for relief. *See Monell*, 436 U.S. at 694.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 48 (1988). To hold a municipality liable under § 1983, a plaintiff must also prove that there is a "direct causal link" between a municipal policy or custom and the alleged deprivation. *Crouch*, 2009 WL 860414, at *3 (citing *Monell*, 436 U.S. at 691). Stated another way, a plaintiff must (1) identify a municipal policy or custom, (2) connect the policy to the municipality, and (3) show that the plaintiff incurred a particular injury due to execution of that policy. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "These stringent standards are necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*." *Graham v. Cty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (citing *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996)).

Here, while Plaintiff's Complaint is not a model of clarity, it is sufficient to satisfy the pleading requirements for municipal liability under § 1983. First, Plaintiff identified a municipal policy, the Ordinance, which, as an official legislative enactment, is clearly connected to Defendant City of Grayson. (Doc. # 1 at ¶ 23). Next, Plaintiff alleges that

---

added). However, this statement appears to be an error, because Defendants later argue that Plaintiff has not "fulfill[ed] the pleading requirements for federal court. *Id.* Defendants have in all other instances maintained that Plaintiff has not met the pleading standard. The Court admonishes Defendants' counsel to be more diligent in drafting pleadings for this Court in the future, but given the context of the pleading, the Court does not take earnestly Defendants' statement that they believe Plaintiff has adequately pled a claim against City of Grayson.

"[a]s a result of the acts of Defendants, including the adoption of the ordinance, Plaintiff's land was taken for public purposes without there being any just compensation for same." *Id.* at ¶ 27. In sum, Plaintiff sufficiently alleges a constitutional violation and connects that violation to an official policy of City of Grayson. Thus, Plaintiff has stated a plausible claim for relief to potentially hold Defendant City of Grayson liable under *Monell*.

### 6. *Additional Arguments*

Finally, Defendants raised several additional arguments in their Reply and Supplemental Brief. In their Reply, Defendants expanded their res-judicata defense to include all of Plaintiff's claims, not just the due-process claims. (Doc. # 20 at 2) ("[T]he doctrine of res judicata bars Plaintiff's claims."). Defendant repeated this argument in their Supplemental Brief. (Doc. # 23 at 1). Also in their Supplemental Brief, Defendants claimed that the statute of limitations bars not just Plaintiff's due-process claims but also Plaintiff's federal-takings claim and unlawful-custom-and-practice claim. *Id.* Neither of these arguments are properly before the Court.

The Sixth Circuit has consistently held that it will not consider arguments that are raised for the first time in reply briefs. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (citing *Am. Trim, LLC v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)). Thus, Defendants are not permitted to argue for the first time in their Reply that res judicata bars Plaintiff's takings claim and unlawful-custom-and-practice claim. Similarly, courts will not consider arguments that are raised for the first time in supplemental briefs if they are outside of the scope of the issue the Court asked the parties to address in the supplemental brief. *Valent v. Comm'r of Soc. Security*, 918 F.3d 516, 524 (6th Cir. 2019), *petition for cert. filed*, (U.S. Aug. 20, 2019) (No. 19-221); *see also United States v. Prado*,

No. 3:16-cr-00099-RGJ-01, 2018 WL 5410967, at *4 (W.D. Ky. Oct. 29, 2018); *Woodger v. Taylor Chevrolet, Inc.*, No. 14-cv-11810, 2015 WL 5026176, at *6 (E.D. Mich. Aug. 25, 2015). Here, the Court ordered the parties to limit their supplemental briefs to how *Knick* affected the *pending Motion to Dismiss*. (Doc. # 21). Because Defendants did not raise the argument that the statute of limitations bars Plaintiff's takings-claim and unlawful-custom-and-practice claim in the Motion to Dismiss, Defendants exceeded the scope of the issue the Court asked the parties to address in the Supplemental Brief. Accordingly, the Court finds that Defendants' arguments that Plaintiff's federal-takings claim and unlawful-custom-and-practice claim are barred by res judicata or by the statute of limitations are not properly before the Court.

## III.   CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS ORDERED** that:

(1)     Defendants' Motion to Dismiss (Doc. # 17) is **GRANTED IN PART** and **DENIED IN PART**; Specifically,

      (a)     Plaintiff's claims against Defendants George Steele, Jack Harper, Pam Nash, and Terry Stamper in both their individual and official capacities are **DISMISSED**; and

      (b)     Plaintiff's unlawful-takings claim (Count 1), municipal-liability claim (Count 2), and due-process claim (Count 3) against Defendant City of Grayson will **proceed to discovery;**

(2)     **Within twenty-one (21) days from the date of the entry of this Order**, the parties, by counsel, shall meet, either in person or by telephone, to discuss the nature and basis of the Plaintiff's claims and Defendant's attendant defenses, and the

possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure, and to develop a proposed discovery plan. *See* Fed. R. Civ. P. 26(f); and

      (3)    **Within ten (10) days after the meeting**, the parties shall file a joint status report containing:

      (a)    the proposed discovery plan;

      (b)    the parties' estimate of the time necessary to file pretrial motions;

      (c)    the parties' belief as to whether the matter is suitable for some form of alternative dispute resolution such as mediation;

      (d)    the parties' estimate as to the probable length of trial; and

      (e)    whether the parties will consent to the jurisdiction of a Magistrate Judge (Atkins) for all further proceedings, including trial, pursuant to 28 U.S.C. § 636(c). Consent forms are attached to this Order and forms signed by all parties' counsel should be filed no later than the date counsels' joint status report is due. If all parties, by counsel, so consent, the Clerk of Court shall reassign this matter to the appropriate Magistrate Judge without the necessity of further order of the Court. L.R. 73.1(c).

Should the parties find that a joint report is not possible, the parties shall each file individual reports which the Court shall entertain for the purposes of setting out its Scheduling Order or other appropriate Order.

This 19th day of November, 2019.



Signed By:

*__David L. Bunning__*  *DB*

**United States District Judge**

K:\DATA\ORDERS\Ashland Civil\2019\19-18 MTD MOO.docx